IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONALD GRAY,
Private, U.S. Army

      Petitioner,

v.          Case No. 5:08-CV-3289-JTM

ERIC BELCHER,
Colonel, U.S. Army,
Commandant,
U.S. Disciplinary Barracks,
Fort Leavenworth, Kansas,

      Respondent.

**MEMORANDUM AND ORDER**

This matter is before the court on Petitioner Ronald Gray's Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241. Dkt. 17. In his Petition and corresponding Traverse (Dkt. 42), Petitioner alleges twenty-one (21) assignments of error relating to his court-martial conviction for premeditated murder, attempted murder, rape, robbery, forcible sodomy, burglary, and larceny. On April 12, 1988, Petitioner was sentenced, by unanimous decision, to death, as well as dishonorable discharge, total forfeitures, and a reduction in rank to Private E-1.

In response to his Petition, this court granted Petitioner a hearing, scheduled for Monday, February 23, 2015, in Kansas City, Kansas. At the time it scheduled this hearing, the court indicated to counsel that it would provide some general procedural guidelines as well as areas of particular interest to the court. This Order serves to outline those guidelines and areas.

At the outset, the court notes that a number of Petitioner's claims have been fully exhausted and afforded full and fair consideration on direct review, namely claims 1-18. As such, the court finds it unnecessary to hear oral argument on those claims. However, the parties

should address, albeit briefly, their opposing positions on the use of the "full and fair consideration" standard (see questions below for further guidance).

What remains in issue are those assignments of error raised for the first time in Petitioner's Writ for Coram Nobis, namely assignments of error: I.C, IV.D, XII, XIX, XX, and XXI. The court requests that the parties focus their attention on addressing these issues. For further guidance, the court sets forth the following questions for the parties' consideration:

**In questions 1-5, the court refers <u>only</u> to those assignments of error that the government argues have been waived due to non-exhaustion.[1]**

1. What is Petitioner's response for not having raised these assignments of error during direct appeal?

2. What is the government's response to Petitioner's claim that this court should and, in fact must, review these assignments of error *de novo*?

3. What about the possibility that, by analyzing Petitioner's assignments of error under the threshold standard applicable to petitions for coram nobis, the military courts have already given these claims full and fair consideration?

4. How, if at all, does the ACMR's language, that "[t]he merits of petitioner's claims [presented in the petition for writ of coram nobis] are now for the federal district court, rather than this court, to decide," affect this court's responsibility as to these assignments of error?

5. How does Petitioner reconcile the holding in *Thomas v. United States Disciplinary Barracks*, 625 F.3d 667 (10th Cir. 2010) with his argument that this court must consider these claims *de novo*?

6. The Tenth Circuit has long applied Supreme Court precedent, first iterated in *Burns v. Wilson*, 346 U.S. 137 (1953), that "when a military decision has dealt *fully and fairly* with an allegation raised in [a habeas] application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." In so holding, the Supreme Court and the Tenth Circuit specifically acknowledge that "in military habeas corpus the inquiry, the scope of matters open for review, has *always* been more narrow than in civil cases." Petitioner argues that the Tenth Circuit never intended for this "full and fair consideration" test to extend to

---

[1] These assignments of error are as follows: (1) Claim I.C, the UCMJ's failure to require a fixed number of members for a general court martial trying a capital case so long as a panel of five or more members was seated; (2) Claim IV.D, trial and appellate counsel's ineffectiveness for using the wrong standard for challenging the "cause challenges" against MSG McCormick and CSM Woods; (3) Claim XII, ineffective assistance of appellate counsel; (4) Claim XIX, petitioner's denial of access to those documents considered by the President; (5) Claim XX, Petitioner's lack of competency during his trial and appellate proceedings; and (6) XXI, lack of military court jurisdiction.

cases of military executions for domestic crimes committed during peacetime. Are there any cases that specifically prohibit application of this "full and fair consideration" test to cases dealing with military personnel sentenced to death for a crime committed during peacetime?

7. How does Petitioner deal with the fact that neither *Burns* nor any other case since its issuance has limited the application of the full and fair consideration test?

8. Petitioner relies on language from the Tenth Circuit noting that "the qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed . . . as well as a heightened scrutiny in reviewing such a decision." *See Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009). Does *this* language somehow prohibit application of the "full and fair consideration" test to the matter now before this court? What is the government's response to this language?

9. Petitioner strongly urges this court to look at the historical background of the balance of jurisdiction between the military and civil courts relative to various classes of defendants and crimes to determine the appropriate standard of review. He argues that relevant Supreme Court precedent demonstrates that the military's power to impose death sentences during peacetime has been "intentionally and consistently limited" by the civil courts. If this is true, how does Petitioner explain the fact that the current version of the UCMJ omitted the express restraints against the military's capital prosecution of domestic peacetime crimes and did so with limited comment?

10. The government argues that this court's review of Petitioner's claims must be "quite limited." Is Petitioner seeking to expand that review? If so, would such an expansion be applicable only in Petitioner's case, only in death penalty cases, or in all instances of federal habeas review of courts-martial?

11. How, if at all, does the notion of *heightened reliability* now present in capital cases as a result of *Furman v. Georgia*, 408 U.S. 238 (1972) change the application of the "full and fair consideration" test?

12. How should this court deal with Judge Rogers' opinion in *Piotrowski v. Commandant, United States Disciplinary Barracks*, 2009 U.S. Dist. LEXIS 119892, at *49-50 (D. Kan. Dec. 22, 2009), specifically the paragraph that reads as follows:

> The more difficult question of whether or not military appellate courts can retain or assert jurisdiction over a collateral action raising Mr. Piotrowski's unexhausted claims once his military discharge has been executed, is one to be answered in the first instance by the military courts. Likewise, whether or not Mr. Piotrowski can present sufficient grounds for a writ of error coram nobis is for those courts to decide in the first instance . . . If military tribunals refuse to hear his unexhausted claims because they have been procedurally defaulted, it is likely his new claims will be considered procedurally defaulted in federal civil court as well.

3

In addition to these questions, the court requests that the parties submit to the court, in writing, seven (7) days prior to the hearing, their **strongest** argument(s).  Although no additional briefing will be entertained, if either party has a case that is **squarely** on point to the questions at issue, please forward just the citation to the court prior to the hearing.

Please be advised that this hearing is purely oral argument; the court does not find it necessary to consider or receive any evidence.  The time allotted for this hearing is **six (6) hours**.  Petitioner will be allotted **four (4) hours** to present his case; Respondent will be allotted **two (2) hours**.  No additional time will be given.

SO ORDERED this 5th day of February, 2015.

s/J. Thomas Marten
J. THOMAS MARTEN
CHIEF JUDGE